IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT IN AND
FOR ORANGE COUNTY, FLORIDA

CASE NO.: 2016-CA-008991-O
COMPLEX BUSINESS LITIGATION DIVISION

TOWN CENTER CONDOMINIUM
ASSOCIATION, INC., a Florida corporation,

    Plaintiff,

v.

TOWN CENTER FOUNDATION, INC., a
Florida corporation; LEXIN CELEBRATION, LLC,
a foreign Delaware limited liability company;
LEXIN CELEBRATION COMMERCIAL,
LLC, a foreign Delaware limited liability
company; LEXIN CAPITAL, LLC, a foreign
Delaware limited liability company; LEXIN
REALTY, LLC, a foreign limited liability
corporation; METIN NEGRIN, an individual;
JAMES DEROW, an individual; FRANCIS
JENKINS, an individual; FATIMA GRIFFITH,
an individual; DENNIS BIALES, an individual;
ADAM HANSKI, an individual; TATYANA
KHVAN, an individual,

    Defendants.

_____/

## THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL[1]

---

[1] The exhibits referenced in this Third Amended Complaint are not re-attached due to the voluminous nature. Exhibits A-M have been previously filed with the Court with the Corrected Second Amended Complaint And are incorporated herein by reference.

Plaintiff TOWN CENTER CONDOMINIUM ASSOCIATION, INC., by and through its undersigned attorney, hereby files this Third Amended Complaint suing TOWN CENTER FOUNDATION, INC.; LEXIN CELEBRATION, LLC; LEXIN CELEBRATION COMMERCIAL, LLC; LEXIN CAPITAL, LLC; LEXIN REALTY, LLC; METIN NEGRIN; JAMES DEROW; FRANCIS JENKINS; FATIMA GRIFFITH; DENNIS BIALES; ADAM HANSKI; and TATYANA KHVAN, and stating:

## GENERAL ALLEGATIONS

1.      This case involves The Celebration Town Center, also referred to as Downtown Celebration, which is the central commercial area for the New Urban Community of Celebration in Osceola County, Florida.

2.      The mixed-use center consists of 21 buildings constructed in single phase by The Walt Disney Company starting in 1995.

3.      Twelve of the buildings originally contained residential apartments. In January 2004 the 21 buildings were acquired by LEXIN CELEBRATION, LLC ("LEXIN") who as developer converted the apartments in the 12 buildings to a condominium ("The Condominium"). The 12 buildings now contain 105 residential condo units sold to residential owners ("The Condominium Unit Owners").

4.      At conversion and by subsequent transfer, LEXIN and LEXIN CELEBRATION COMMERCIAL, LLC ("LEXIN COMMERCIAL") retained

ownership of the common areas and component facilities of the condominium including the building exteriors and the commercial buildings and spaces. LEXIN and LEXIN COMMERCIAL share overlapping equity owners, principals and/or management with two related entities, LEXIN CAPITAL, LLC ("LEXIN CAPITAL") and LEXIN REALTY, LLC ("LEXIN REALTY"). All of the LEXIN companies shall collectively be referred to as the "LEXIN ENTITIES".

5.     At the time of the conversion and creation of the condominium, LEXIN and LEXIN CAPITAL caused the creation of TOWN CENTER CONDOMINIUM ASSOCIATION, INC. ("ASSOCIATION") which is a Florida corporation organized and existing pursuant to Chapter 718, Florida Statutes, to provide a corporate entity, pursuant to Florida Statute §718.111, for the operation of The Condominium.

6.     At the same time, LEXIN and LEXIN CAPITAL caused the creation of TOWN CENTER FOUNDATION, INC. ("TCF") which operates as a master association over both the residential and commercial spaces in all 21 buildings at Town Center. The following individuals, acting as employees and/or agents of LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL have served, or continue to serve, as members of the Board of Directors of TCF: METIN NEGRIN, JAMES DEROW, FRANCIS JENKINS, FATIMA GRIFFITH, DENNIS BIALES, ADAM HANSKI, and TATYANA KHVAN (collectively, the "TCF DIRECTORS").

7.     Pursuant to the governing documents of TCF, all condominium unit owners are members of TCF, but the ASSOCIATION, on behalf of and as agent for the unit owners, votes on behalf of the owners on any and all issues subject to vote and otherwise represents the interests of the unit owners before TCF.

8.     LEXIN has not yet turned over control of the Board of Directors of TCF to the owners.  The Board of Directors of TCF at all times material hereto since conversion was and is controlled by LEXIN, LEXIN COMMERCIAL, LEXN REALTY and/or LEXIN CAPITAL via the TCF DIRECTORS.  LEXIN is owned and managed by LEXIN CAPITAL. The unit owners are Class A owners of TCF entitled to a 40% minority vote.

9.     The governing documents of TCF provide "all maintenance, repair and replacement of the Component Facilities and the Exteriors of all Buildings will be performed by the Foundation and the cost thereof will be included in the assessments made pursuant to the Foundation Declaration." These maintenance obligations are provided for specifically in Section 6.6 of the Declaration of Covenants, Grant of Easements and Agreement for shared use of Celebration Town Center and in Articles 6.5 and 20 of the Declaration of Condominium for Town Center Condominium.  One or more of the LEXIN ENTITIES have accepted the responsibility of providing some or all of the required maintenance for and from TCF.

10.     Historically, the Condominium Unit Owners have paid assessments to TCF to fund required maintenance. Historically, commercial tenants have also paid rents to LEXIN and/or LEXIN COMMERCIAL who have in turn paid portions of same to TCF as assessments for maintenance.

11.     In May 2005, LEXIN COMMERCIAL signed a secured promissory note with Greenwich Capital Financial Products in the amount of $23 million. In April 2015, LEXIN COMMERCIAL amended this note additionally securing against the commercial spaces additional advances in the amount of $14,065,223.

12.     The 12 buildings at Town Center containing residential condo units are in a colossal state of disrepair. What is known is that the buildings have suffered from pervasive, sustained moisture intrusion with resulting degradation of structural components and of interior components with related termite infestation. The exact nature, extent and cause of the problems, however, historically were not shared with the ASSOCIATION or the unit owners, and have been historically hidden from them by TCF, LEXIN, LEXIN COMMERCIAL, LEXIN CAPITAL, LEXIN REALTY, and THE TCF DIRECTORS.

13.     Historically since conversion, ASSOCIATION, on behalf of unit owners, has repeatedly and consistently asked TCF, LEXIN, LEXIN COMMERCIAL, LEXIN CAPITAL, LEXIN REALTY, and THE TCF DIRECTORS for an explanation of what maintenance was being performed, of what maintenance was planned, and of how assessments collected from TCCA and

unit owners had been utilized. ASSOCIATION has also requested copies of historical maintenance records and more recently that its independent experts be granted full access to the construction sites in order to monitor and document what is occurring, to shadow the repair work, to independently assess the scope, nature and extent of the problems, and to ensure valuable evidence is preserved and not discarded. While the President of ASSOCIATION was granted limited pre-suit access personally to the construction sites, she has no specialized knowledge in construction, and the pre-suit requests of the ASSOCIATION were consistently largely denied or ignored by TCF, LEXIN, LEXIN COMMERCIAL, LEXIN CAPITAL, LEXIN REALTY and THE TCF DIRECTORS. Before suit was filed, ASSOCIATION's retained expert Pistorino and Alam was never given access to the sites, and no shadowing of the construction work was allowed. No historical maintenance records have been produced. ASSOCIATION's historical requests for an explanation of maintenance work and the application of assessments were ignored.

14.    In January 2015 TCF and/or one or more of the LEXIN ENTITIES retained Dan Dixon Architect, LLC ("DIXON") to inspect and analyze the problems. DIXON issued a Summary Report which is attached hereto as Exhibit A. The Summary Report was eventually shared with ASSOCIATION and generally provides that the cause of the problems in his opinion is a combination of lack of proper maintenance historically and original construction defects.

15.     Following the issuance of the Summary Report, TCF and/or one or more of the LEXIN ENTITIES retained DIXON as engineer and Coastal Reconstruction, Inc. as contractor and commenced significant construction repair work on 2 of the 12 buildings.

16.     On or about February 5, 2016, the ASSOCIATION was provided with a Notice of Special Open Meeting of the Board of Directors of Town Center Foundation to occur on February 22, 2016. This is attached as Exhibit B hereto.

17.     Agenda item No. 3 for the Special Meeting was:

To discuss, propose, adopt and levy a CELEBRATION Improvement

Assessment in accordance with Article IV of the Foundation Declaration in the amount of $4,162,253 in total and ($1,040,563.25) to be payable as an installment assessment in each quarter over the next 12 months.

The Special Assessment was for fiscal year 2016 only and was for repairs to only 5 of the 12 buildings.

18.     Prior to the meeting, the ASSOCIATION was provided with a copy of the DIXON Summary Report.

19.     The ASSOCIATION attended the Open Board Meeting through its own representatives and through counsel.   Many condominium unit owners attended. A court reporter retained by ASSOCIATION attended.   The transcript from the Board Meeting is attached as Exhibit C hereto.

20.   The ASSOCIATION and unit owners objected to the Special Assessment. No special assessment was levied at the February 22, 2016 meeting.

21.   At the meeting, counsel for the ASSOCIATION specifically addressed the audience and the Board of TCF and asked that its retained experts be given access to the construction sites as construction work was ongoing.  TCF and the LEXIN ENTITIES did not agree to this. DIXON spoke at the Special Meeting.  He confirmed his Summary Report was only that – a summary – and he informed the audience that he authored a more detailed and complete report. Counsel for the ASSOCIATION and unit owners requested a copy of same.  TCF and LEXIN did not agree to this.

22.   During the Open Board Meeting, counsel for TCF/LEXIN ENTITIES repeatedly informed the audience they wanted to meet with counsel for the ASSOCIATION following the meeting to discuss these and other issues.

23.   Following the meeting, counsel for the ASSOCIATION attempted to engage counsel for TCF/LEXIN ENTITIES in this promised dialog, but counsel for TCF/LEXIN ENTITIES instead refused and walked out of the meeting.

24.   On February 29, 2016, counsel for the ASSOCIATION sent email correspondence to counsel for TCF/LEXIN ENTITIES again requesting a complete copy of the full DIXON report and requesting its experts be given access to the construction sites. This is attached hereto as Exhibit D.   Counsel for TCF/LEXIN ENTITIES ignored this email and never responded to it.

25.   On March 4, 2016, counsel for TCF/LEXIN ENTITIES wrote to counsel for ASSOCIATION with regard to various issues at Town Center. The letter is attached hereto as Exhibit E.   Importantly, while the letter addresses many things and makes what the Plaintiff considers many absurd demands, respectfully, the letter completely ignores the repeated requests made for a full copy of the DIXON Report and that ASSOCIATION's experts be given full access to the construction sites to shadow the construction work ongoing. Construction was and still is ongoing.

26.   Counsel for the ASSOCIATION responded to the March 4 letter on March 15, 2016. The response letter is attached as Exhibit F hereto. Among other things, counsel for the ASSOCIATION again requested TCF/LEXIN ENTITIES immediately turn over the full DIXON Report and immediately give the ASSOCIATION and its experts full access to the construction sites.   Counsel for the ASSOCIATION specifically stated its concern with evidence spoliation issues and indicated while it wanted to resolve all the disputes it had with TCF/LEXIN ENTITIES it needed both the full DIXON report and immediate access to the construction zones for its experts within one week to avoid a lawsuit.

27.   Counsel for TCF/LEXIN ENTITIES ignored this letter and did not respond at all within the one week.   On April 1, 2016, counsel for the ASSOCIATION spoke with counsel for TCF/LEXIN ENTITIES in person in court on a separate matter and again requested both the report and immediate access for

its experts. This conversation was then memorialized in an email counsel for the ASSOCIATION sent to counsel for TCF/LEXIN ENTITIES later that same day on April 1, 2016. This is attached as Exhibit G hereto. Counsel for the ASSOCIATION believed counsel for TCF/LEXIN ENTITIES was going to turn over the full DIXON report and give the requested access. Counsel for TCF/LEXIN ENTITIES responded the same day by email, again on Friday, April 1, 2016, by stating he would call counsel for the ASSOCIATION on Monday, April 4, 2016. This is also contained in Exhibit G.

28.   On Sunday April 3, 2016, counsel for the ASSOCIATION sent another email to counsel for TCF/LEXIN ENTITIES. This is also part of what is attached hereto as Exhibit G. Counsel for the ASSOCIATION specifically asked counsel for TCF/LEXIN ENTITIES to call him on Monday, as he had promised, gave counsel his mobile phone number to insure they could actually talk and that merely no voicemail messages would be exchanged, and again expressed the urgency in this situation given the spoliation of evidence concerns. Counsel for the ASSOCIATION specifically asked that all construction work cease at Town Center until these issues could be resolved and for confirmation of same.

29.   Counsel for TCF/LEXIN ENTITIES ignored the mobile phone number overture of counsel for ASSOCIATION, and instead predictably called and left a voicemail message on ASSOCIATION counsel's work line on Monday April 4, 2016. Counsel for TCF/LEXIN ENTITIES verbally informed counsel for

ASSOCIATION in the voicemail message he was recommending full access and disclosure of the entire DIXON report, but was having difficulty getting a final response in that regard from his client. Counsel for TCF/LEXIN ENTITIES did not respond to the request that construction work cease at Town Center. Counsel for ASSOCIATION left a voicemail message in response saying it was inexcusable that this was taking so long and that a suit filing at this point was inevitable. Again, counsel for ASSOCIATION provided his mobile phone number so counsel could actually speak instead of exchanging voicemail messages.

30.    On April 5, 2016, counsel for TCF/LEXIN ENTITIES contacted counsel for ASSOCIATION on his mobile phone number and after polite but heated discussion agreed ASSOCIATION's experts would be given full access to the construction sites as well as a full and complete copy of the DIXON report. Counsel for TCF/LEXIN ENTITIES informed counsel for ASSOCIATION he would call back by the end of business on April 5, 2016 to work out the details of same. Counsel never called as promised.

31.    On April 12, 2016, Plaintiff initiated this lawsuit by filing an Initial Verified Complaint and Emergency Motion Seeking a Temporary Injunction. The thrust of this initial complaint was to secure a full copy of the DIXON report and to secure Plaintiff's expert's access to the construction sites so Plaintiff could finally achieve transparency as to the status and condition of the buildings.

32.    In the initial complaint, Plaintiff also sought production of all original construction plans and specifications for the construction of the 21 buildings, all maintenance records relative to the 21 buildings historically, and the plans and specifications for the repair work being completed by DIXON and COASTAL.

33.    After the lawsuit was filed, but before an emergency temporary injunction hearing was scheduled, TCF and the LEXIN ENTITIES finally granted limited access to two of the 21 buildings to Plaintiff's retained expert Pistorino & Alam. Meaningful access has not been given to the other buildings. TCF and the LEXIN ENTITIES also produced what they claim is a complete copy of the DIXON report. It is attached here as Exhibit H. TCF and the LEXIN ENTITIES produced some plans and specifications. They produced no maintenance records.

34.    Plaintiff also requested TCF and the LEXIN ENTITIES provide a string-list of financial records. This is attached as Exhibit I. TCF and the LEXIN ENTITIES have ignored this and follow-up requests.

35.    While Pistorino and Alam have only had limited access to two of the 21 buildings and have only begun their due diligence needed to fully evaluate the status and condition of all 21 buildings for ASSOCIATION, Pistorino and Alam have corroborated that at least the 2 buildings examined are suffering severe moisture intrusion caused by a combination of original building latent defects and historical improper maintenance. They have also issued a preliminary reported

attached as Exhibit J. providing their opinions as to why the repair work now ongoing on the 2 buildings is also deficient.

36.    Pistorino and Alam have also advised Osceola County about an emergency need for shoring on one of the buildings due to what they considered a structural concern of danger to occupants. See, Exhibit K.

37.    This case involves potential monetary damages in excess of $15,000; therefore, jurisdiction is proper with this Court.

38.    The property which is the subject of this action is located within Osceola County, Florida.

39.    The ASSOCIATION has an office for the transaction of its usual and customary business in Osceola County, Florida.

40.    Defendants at all times material hereto conducted customary business in Osceola County, Florida, and the alleged causes accrued in Osceola County, Florida. Jurisdiction and venue, then, are proper in Osceola County, Florida, with this case properly assigned to the Business Court Division of the Ninth Judicial Circuit.

41.    ASSOCIATION brings this action in its own right, and pursuant to Florida Statute § 718.111(3) and Florida Rule of Civil Procedure 1.221. The ASSOCIATION is the lawful, adequate, and appropriate representative of the class of Unit Owners comprising The Condominium and all common areas, improvements and appurtenances incidental thereto.

42.     ASSOCIATION has had to retain the undersigned attorney and law firm and is obligated to reimburse its attorney a reasonable attorney's fee and all expended litigation costs for services rendered.

43.     Plaintiff has complied with any and all conditions precedent to the bringing of this cause. Ch. 558.004 does not apply to this situation where Defendants are themselves conducting repairs and it is Plaintiff who is claiming it has been denied historical access to the sites in order to be fully and properly advised as to the status of the buildings. Plaintiff has attempted to comply with Fla. Stat. 720.311 (requiring pre-suit mediation) prior to filing this Amended Complaint. Defendants contend however they are not regulated by CH. 720 and that thus this statute is not applicable. See Exhibit E. Plaintiff is alleging here claims against TCF and one or more of the LEXIN ENTITIES for breach of fiduciary duty against one or more directors and is also asserting claims for damages to residential condo units due to the alleged failure of TCF and one or more of the LEXIN ENTITIES to properly maintain the common elements of the condominium property. Therefore, Florida Statute 718.1255 requiring pre-suit arbitration is inapplicable.

## COUNT I – Breach of Contract for Negligent Maintenance (against TCF)

44.     Plaintiff re-alleges and incorporates by reference all allegations of paragraphs 1 through 43 as if fully set forth herein.

45.    The Declaration of Covenants, Grant of Easements and Agreement for Shared Use of Celebration Town Center is attached hereto as Exhibit L ( hereinafter, "Declaration of Town Center").

46.    The Declaration of Condominium for the Town Center Condominium is attached hereto as Exhibit M (hereinafter, "Declaration of Condominium").

47.    Both Declarations referenced in the above two paragraphs (collectively "the Declarations") constitute express written contracts between TCF and the ASSOCIATION individually and on behalf of all condominium residential unit owners.

48.    Article 6.6 of the Declaration of Covenants and Articles 6.5 and 20 of the Declaration of Condominium expressly provide that all maintenance, repair and replacement of the Component Facilities and the Exteriors of all Buildings will be performed by TCF.

49.    TCF has negligently failed in its obligations of maintenance relative to the Component Facilities and Exteriors of the 12 buildings containing residential condominium units and has concealed Plaintiff's causes of action historically since conversion in this regard. Not only has TCF historically failed to perform reasonable and necessary maintenance over the 12 buildings, but the maintenance it is currently performing over 2 of the buildings is being negligently and improperly performed.

50.     Such constitutes a material breach of TCF's contractual obligations to ASSOCIATION individually and on behalf of all Condominium Unit Owners.

51.     Such has been the proximate cause of damages to ASSOCIATION individually and on behalf of all Condominium Unit Owners.

WHEREFORE, ASSOCIATION, individually and on behalf of all Condominium Unit Owners, seeks final judgment from this Court for all damages -- compensatory, consequential, special, and incidental, caused by the material contract breaches of TCF, for an award of its expended attorney's fees and costs as the prevailing party hereto pursuant to Florida Statute §720.305, for prejudgment interest on said sums, and for any and all other relief this Court deems just and proper. Plaintiff also seeks trial by jury on all issues so triable.

## COUNT II – Negligent Maintenance (against TCF, the TCF DIRECTORS, and THE LEXIN ENTITIES) and Vicarious Liability (against the LEXIN ENTITIES)

52.     Plaintiff re-alleges and incorporates all allegations in paragraphs 1-43 as if fully set forth herein.

53.     TCF, the TCF DIRECTORS, and one or more of the LEXIN ENTITIES owe a duty to ASSOCIATION, individually and on behalf of all Condominium Unit Owners, to properly perform all reasonable and necessary maintenance over the 12 buildings containing residential condominium units.

54.     TCF, the TCF DIRECTORS, and/or the LEXIN ENTITIES have breached their duties as they have not performed reasonable and necessary

maintenance historically, as they have concealed Plaintiff's causes of action historically since conversion in this regard, and as they are negligently performing current maintenance on 2 of the 12 buildings.

55.    This has been the proximate cause of injury to ASSOCIATION individually and on behalf of all Condominium Unit Owners who have sustained damages.

56.    Simultaneous with their service on the Board of TCF, the TCF DIRECTORS were acting as employees and/or agents of LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL. Within the scope of that agency, the TCF DIRECTORS operated TCF negligently as described above. LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL are therefore vicariously liable to ASSOCIATION for the injury to ASSOCIATION.

WHEREFORE, ASSOCIATION, individually and on behalf of all Condominium Unit Owners, seeks final judgment from this Court for all damages -- compensatory, consequential, special and incidental, caused by the negligent maintenance, for an award of its expended attorney's fees and costs as the prevailing party hereto pursuant to Florida Statute §720.305, for an award of prejudgment interest on said sums, and for any and all other relief this Court deems just and proper. Plaintiff also seeks trial by jury on all issues so triable.

**COUNT III- Breach of Fiduciary Duty for Improper Maintenance
(against TCF, the TCF DIRECTORS and the LEXIN ENTITIES)
and Vicarious Liability (against the LEXIN ENTITIES)**

57.     Plaintiff re-alleges and incorporates all allegations of paragraphs 1-43 as if specifically set forth herein.

58.     TCF is regulated by Fla. Stat. §720 et seq. and specifically §720.303(1).

59.     The 21 buildings in Town Center are not property "primarily intended for commercial, industrial, or other non-residential use" pursuant to Fla. Stat. §720.302.

60.     12 of the 21 buildings at Town Center are mixed use containing both residential and commercial areas. Of the 12 buildings, a majority of the square footage is devoted to residential usage.

61.     Florida Statutes §617.0830, §617.0831 and §607.0831 require TCF, the TCF DIRECTORS, and the LEXIN ENTITIES to (1) act in good faith, (2) with the care that an ordinary prudent person in a like position would exercise, and (3) in a manner he/she reasonably believes to be in the best interests of TCF and its owners.

62.     The TCF DIRECTORS and the LEXIN ENTITIES violated this standard of care and materially breached their fiduciary duties to TCF and its owners, including ASSOCIATION and the Condominium Unit Owners, in unreasonably and incompetently, and therefore negligently, failing to direct and

authorize on behalf of TCF the reasonable and necessary maintenance historically on the 12 buildings containing residential condominium units, in concealing Plaintiff's causes of action in this regard historically, and in failing to conduct the currently ongoing maintenance properly. TCF, in turn, violated this standard of care and materially breached its duties to its owners, including ASSOCIATION and the Condominium Unit Owners in unreasonably and incompetently, and therefore negligently, failing to direct and authorize the reasonable and necessary maintenance historically on the 12 buildings containing residential condominium units, in concealing Plaintiff's causes of action in this regard historically, and in failing to conduct the currently ongoing maintenance properly.

63.     This has been the proximate cause of injury to ASSOCIATION individually and on behalf of Condominium Unit Owners.

64.     Simultaneous with their service on the Board of TCF, the TCF DIRECTORS were also employees and/or agents of LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL. Within the scope of that agency, the TCF DIRECTORS operated TCF for the benefit of LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL, rather than in TCF's best interests. The LEXIN ENTITIES are therefore vicariously liable to ASSOCIATION for the injury to ASSOCIATION.

WHEREFORE, ASSOCIATION, individually and on behalf of all Condominium Unit Owners, seeks final judgment from this Court for all damages

-- compensatory, consequential, special, and incidental, caused by the breaches of fiduciary duty, for prejudgment interest on said sums, for an award of its expended attorney's fees and costs as the prevailing party hereto pursuant to Florida Statute §720.305, and for any and all other relief this Court deems just and proper. Plaintiff also seeks trial by jury on all issues so triable.

### COUNT IV- Alternative Count for Breach of Fiduciary Duty for Improper Maintenance (against the TCF DIRECTORS and the LEXIN ENTITIES) and Vicarious Liability (against the LEXIN ENTITIES)

65.     Plaintiff re-alleges and incorporates all allegations of paragraphs 1-43 and 58-64 as if fully set forth herein.

66.     In the alternative to Count III, if Florida Statute §720 does not regulate the operations of TCF, Plaintiff further alleges under Florida Statute §607.0831 that the breaches of fiduciary duty by the TCF DIRECTORS and the LEXIN ENTITIES alleged in Count III constitute a conscious disregard for the best interests of TCF and its owners and/or willful misconduct.

67.     Simultaneous with their service on the Board of TCF, the TCF DIRECTORS were also employees and/or agents of LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL. Within the scope of that agency, the TCF DIRECTORS operated TCF for the benefit of LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL, rather than in TCF's best interests.  LEXIN, LEXIN COMMERCIAL, LEXIN REALTY

and/or LEXIN CAPITAL are therefore vicariously liable to ASSOCIATION for the injury to ASSOCIATION.

WHEREFORE, ASSOCIATION, individually and on behalf of all Condominium Unit Owners, seeks final judgment from this Court for all damages -- compensatory, consequential, special, and incidental -- caused by the breaches of fiduciary duty, for prejudgment interest on said sums, for an award of its taxable costs as the prevailing party hereto, and for any and all other relief this Court deems just and proper. Plaintiff also seeks trial by jury on all issues so triable.

### COUNT V- Violation of Florida's Deceptive and Unfair Trade Practices Statute Due to Improper Maintenance (Against TCF)

68.     Plaintiff re-alleges and incorporates all allegations of paragraphs 1-43 and 57-64 as if fully set forth herein.

69.     ASSOCIATION on behalf of all Condominium Unit Owners are "consumers" as that term is defined under Fla. Stat. §501.203(7).

70.     TCF was at all times material hereto involved in a "trade or commerce," as those terms are defined in Fla. Stat. §501.2036(8), in overseeing the operations and maintenance of all 21 Buildings at Town Center.

71.     Plaintiff alleges TCF, through the TCF DIRECTORS, LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL employed unfair or deceptive acts in negligently or willfully failing to properly maintain the Component Facilities and Exteriors of the 12 Buildings at Town Center containing

residential condominium units historically and in historically concealing Plaintiff's causes of action.

72.     As a proximate cause of same, ASSOCIATION individually and on behalf of all Condominium Unit Owners have been injured.

WHEREFORE, ASSOCIATION, individually and on behalf of all Condominium Unit Owners, seeks final judgment from this Court for all damages -- compensatory, consequential, special and incidental, caused by the Deceptive or Unfair Trade Practices of TCF, for an award of prejudgment interest on said sums, for an award of its expended attorney's fees and costs as the prevailing party hereto pursuant to Florida Statute §501.2105, and for any and all other relief this Court deems just and proper. Plaintiff also seeks trial by jury on all issues so triable.

## COUNT VI- Negligence (Against TCF, the TCF DIRECTORS and the LEXIN ENTITIES), and Vicarious Liability (against the LEXIN ENTITIES)

73.     Plaintiff re-alleges and incorporates all allegations of paragraphs 1-43 as if fully set forth herein.

74.     LEXIN served as the Developer by converting the 105 apartments in 12 of the 21 buildings at Town Center into a residential condominium and selling said condominium units to the public at large.  TCF functioned as the master association operating the Association with respect to repairs and maintenance, among other obligations.

75.    LEXIN, and the TCF DIRECTORS it appointed to operate TCF on behalf of LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL owed a duty to ASSOCIATION and the Condominium Unit Owners to convert the apartments to a Condominium non-negligently, including, but not limited to, non-negligently inspecting the subject property for required repairs and defects; developing an appropriate scope of repair during conversion; supervising and overseeing the conversion of the Condominium; and as to all of the foregoing parties and TCF, managing and maintaining the Subject Property, and in timely prosecuting claims and lawsuits, if necessary and possible, against The Walt Disney Company and/or other responsible parties to recover for original latent construction defects prior to the expiration of the applicable statute of repose.

76.    TCF, the TCF DIRECTORS, and/or the LEXIN ENTITIES breached these duties by negligently inspecting, converting, managing, and maintaining the Condominium and in failing to timely prosecute monetary claims against The Walt Disney Company and/or other responsible parties so to recover for original latent construction defects prior to the expiration of the applicable statute of repose, thereby resulting proximately in damages to the Condominium including, but not limited to, water and property damage.

77.    TCF, the TCF DIRECTORS, and/or the LEXIN ENTITIES knew or should have known the Condominium had construction deficiencies, water intrusion issues, structural issues, and other substantial defects that if known to the

ASSOCIATION and/or The Condominium Unit Owners, such owners would not have purchased units for the purchase prices they paid if they would have purchased units at all.

78.    TCF, the TCF DIRECTORS, and/or the LEXIN ENTITIES negligently, recklessly or intentionally have concealed these defects from the point of conversion up to the current day.

79.    The existence and cause of the subject defects, deficiencies, and damages are not readily recognizable by persons who lack special knowledge or training, or they are hidden by building components or finishes, and they are latent defects and deficiencies to the ASSOCIATION and the Condominium Unit Owners who, in the exercise of reasonable diligence, could not discover the existence or causes of such defects and deficiencies to date.

80.    Simultaneous with their service on the Board of TCF, the TCF DIRECTORS were also acting as employees and/or agents of LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL.  Within the scope of that agency, the TCF DIRECTORS operated TCF for the benefit of LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL, rather than in TCF's best interests.  LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL are therefore vicariously liable to ASSOCIATION for the injury to ASSOCIATION.

WHEREFORE, the ASSOCIATION, individually and on behalf of all Condominium Unit Owners, seeks final judgment for all damages, including, but not limited to, the costs of repairing the deficiencies, the resulting damages from the deficiencies, the incidental and consequential damages caused thereby, attorney's fees and costs incurred in the prosecution of this suit pursuant to Fla. Stat. §720.305, prejudgment interest on said sums and trial by jury. ASSOCIATION also seeks any and all other relief this Court deems just and proper.

## COUNT VII- Deceptive and Unfair Trade Practices
### (against LEXIN)

81.     Plaintiff re-alleges and incorporates all allegations of paragraphs 1-43 as if fully set forth herein.

82.     ASSOCIATION's members, the Condominium Unit Owners, are "consumers" as defined in Fla. Stat. §501.203(7) (2006).

83.     At all times relevant hereto, LEXIN was involved in a "trade or commerce" as defined in Fla. Stat. §501.203(8) (2006), in converting residential apartments to a Condominium and in selling individual dwelling units and common-areas of the Condominium to the Condominium Unit Owners.

84.     LEXIN employed Unfair and/or Deceptive acts on purchasers in violation of Fla. Stat. §501.204(1) (2006) that were likely to mislead consumers. This included express or implied representations that the units and Condominium's common areas were fit for their intended use and purpose, constructed and/or

repaired and maintained in a good and workmanlike manner, in accordance with at least the minimum standards of the applicable building codes and other industry standards, and free from water intrusion and related damages.

85.    LEXIN knew or should have known that the Condominium had construction deficiencies, water instruction issues, structural issues and other substantial defects at the time of conversion that if known to the Condominium Unit Owners, such owners would not have purchased units for the asking price if at all.

86.    LEXIN and the TCF DIRECTORS it appointed also knew or should have known they could prosecute timely legal claims against The Walt Disney Company and/or against other responsible parties to recover for original latent construction deficiencies, and that it chose not to do so within the applicable statute of repose.

87.    LEXIN and the TCF DIRECTORS negligently, recklessly, and/or intentionally concealed the defects addressed in Paragraph 85, and failed to timely prosecute legal claims as addressed in paragraph 86 in a purposeful effort to continue to sell units and to prevent legal claims against LEXIN.

88.    The existence and causes of the subject defects, deficiencies, failure to prosecute legal claims, and damages are not readily recognizable by persons who lack specialized knowledge or training, or they are hidden by building components or finishes, and they are latent defects and deficiencies to the

ASSOCIATION and the Condominium Unit Owners who, in the exercise of reasonable diligence, could not discover the existence or cause of such defects and deficiencies to date.

89.    LEXIN's deceptive or unfair business practices have been the proximate cause of injury to ASSOCIATION individually and on behalf of the Condominium Unit Owners.

WHEREFORE, the ASSOCIATION, individually and on behalf of the Condominium Unit Owners, demands judgment against LEXIN for actual damages, prejudgment interest on said sums, its attorney's fees and costs pursuant to Florida Statute §501.2105, any and all other relief this Court deems just and proper, and demands trial by jury on all issues so triable.

## COUNT VIII- Breach of Fiduciary Duty for Misappropriation of Funds (against TCF, the LEXIN ENTITIES, and the TCF DIRECTORS) and Vicarious Liability (against the LEXIN ENTITIES)

90.    Plaintiff re-alleges and incorporates all allegations of paragraphs 1-43 as if specifically set forth herein.

91.    TCF is regulated by Fla. Stat. §720 et seq. and specifically §720.303(1)

92.    The 21 buildings in Town Center are not property "primarily intended for commercial, industrial, or other non-residential use" per Fla. Stat. §720.302.

93.    12 of the 21 buildings are mixed use containing both residential and commercial areas. Of the 12, a majority of square footage is devoted to residential usage.

94.    Florida Statute §617.0830, §617.0831 and §607.0831 require TCF, the TCF DIRECTORS, and the LEXIN ENTITIES, to (1) act in good faith, (2) with the care that an ordinary prudent person in a like position would exercise, and (3) in a manner he/she reasonably believes to be in the best interests of TCF and its owners.

95.    The TCF DIRECTORS and the LEXIN ENTITIES have violated this standard of care and materially breached their fiduciary duties to TCF and to its Owners, including ASSOCIATION individually and on behalf of the Condominium Unit Owners, by acting unreasonably and incompetently, and therefore negligently, in the following ways:

A.    Wrongfully directing the over-maintenance historically of the commercial spaces in the 21 buildings at Town Center by TCF at the expense of needed maintenance over the residential areas of same; and

B.    Failing historically to require the proper payment of assessments, failing to assess the proper amount of assessments and failing to collect assessments from the owners of commercial spaces in the 21 buildings which are owned and controlled by affiliates of LEXIN, LEXIN COMMERCIAL and

LEXIN CAPITAL, with common equity owners and management all at the expense of needed maintenance over the residential areas of same.

96.    This was done, for among other reasons, so the owners of the commercial spaces, LEXIN, LEXIN COMMERCIAL, and/or LEXIN CAPITAL, all with common equity ownership and management, could increase the market value of the commercial buildings and spaces and then obtain financing by leveraging the equity of same with said financing being used for the financial benefit of the common owners of LEXIN, LEXIN COMMERCIAL, LEXIN CAPITAL, LEXIN REALTY, and their affiliates.

97.    This was also done, for among other reasons, so commercial rents paid by commercial tenants to LEXIN, LEXIN COMMERCIAL, and/or LEXIN CAPITAL, and their affiliates, could in part fund distributions to the common equity owners of these entities as these entities, unlike TCF, are for profit entities which unlike not-for-profit entities can make equity distributions to their equity owners.

98.    TCF, the TCF DIRECTORS, LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL have concealed Plaintiff's causes of action historically.

99.    The breaches of fiduciary duty alleged in paragraph 95 have been the proximate cause of injury to ASSOCIATION individually and on behalf of the Condominium Unit Owners.

100.   Simultaneous with their service on the Board of TCF, the TCF DIRECTORS were also employees and/or agents of LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL.  Within the scope of that agency, the TCF DIRECTORS operated TCF for the benefit of LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL, rather than in TCF's best interests.  LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL are therefore vicariously liable to ASSOCIATION for the injury to ASSOCIATION.

WHEREFORE, ASSOCIATION, individually and on behalf of all Condominium Unit Owners, seeks final judgment from this Court for all damages -- compensatory, consequential, special, and incidental, caused by the breaches of fiduciary duty, for prejudgment interest on said sums, for an award of its expended attorney's fees and costs as the prevailing party hereto pursuant to Florida Statute §720.305, and for any and all other relief this Court deems just and proper. Plaintiff also seeks trial by jury on all issues so triable.

**Count IX- Alternative Count for Breach of Fiduciary Duty for Misappropriation of Funds (against TCF, the TCF DIRECTORS and the LEXIN ENTITIES), and Vicarious Liability the LEXIN ENTITIES)**

101.   Plaintiff re-alleges and incorporates all allegations of paragraphs 1-43 and 91-100 as if specifically set forth herein.

102.   In the alternative to Count VIII, if Fla. Stat. §720 does not regulate the operations of TCF, Plaintiff further alleges under Fla. Stat. §607.0831 that TCF's, the TCF DIRECTORS' and the LEXIN ENTITIES' breaches of fiduciary duty alleged in Count VIII constitute a "conscious disregard for the best interests of TCF, its owners, and/or willful misconduct."

103.   Simultaneous with their service on the Board of TCF, the TCF DIRECTORS were also employees and/or agents of LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL.  Within the scope of that agency, the TCF DIRECTORS operated TCF for the benefit of LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL, rather than in TCF's best interests.   LEXIN, LEXIN COMMERCIAL, LEXIN REALTY and/or LEXIN CAPITAL are therefore vicariously liable to ASSOCIATION for the injury to ASSOCIATION.

WHEREFORE,  ASSOCIATION,  individually  and  on  behalf  of  all Condominium Unit Owners, seeks final judgment from this Court for all damages -- compensatory, consequential, special, and incidental, caused by the breaches of fiduciary duty for prejudgment interest on said sums, for an award of its taxable costs as the prevailing party hereto, and for any and all other relief this Court deems just and proper. Plaintiff also seeks trial by jury on all issues so triable.

### Count X—Declaratory Judgment (against TCF)

104.   Plaintiff realleges and incorporates all allegations of paragraphs 1-43 as if specifically set forth herein.

105.   This is an action for declaratory judgment brought pursuant to Florida Statute 86.011.

106.   Plaintiff has brought this action seeking an award of civil damages for alleged breach of contract and alleged tortious misconduct against TCF.

107.   TCF alleges it is not liable for any such misconduct, but claims if it is so liable, and if the trial court enters a civil judgment for monetary damages against it, that it, in turn, has the right to levy assessments against the owners of TCF, including but not limited to ASSOCIATION and the residential condo unit owners, to satisfy the civil judgment in favor of ASSOCIATION individually and on behalf of the residential condo unit owners regardless of the availability of insurance proceeds.  Plaintiff disputes this claiming TCF may not assess its way out of a civil monetary judgment for damages as a matter of Florida statutory and common-law and pursuant to the governing documents of TCF.

108.   A bona fide, actual, present, practical need for a declaration from the trial court exists.

109.   The declaration deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts, and some immunity, power, privilege or right of the Plaintiff is dependent upon the facts or the law applicable to the facts.

110.   TCF has an actual, present, adverse and antagonistic interest in the subject matter either in fact or in law, and the adverse antagonistic interests are all here before the court by proper process and are not being propounded from mere curiosity.

WHEREFORE, Plaintiff seeks a declaration from this Court establishing that TCF may not attempt to assess either the ASSOCIATION or the residential condo unit owners to satisfy any civil monetary judgment entered against it in this case and for an award of its expended attorney's fees and costs as the prevailing party hereto pursuant to Florida Statute 720.305.

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing has been filed and served via the Florida Courts E-Filing Portal on this 5th day of December, 2017.

BY:/s/ Jon M. Oden

Jon Marshall Oden
Florida Bar No.: 0038172
WILLIS & ODEN PL
2121 S. Hiawassee Road, Suite 116
Orlando, FL 32835-8762
Tel: (407) 903-9939
Fax: (407) 903-9929
Email: joden@willisoden.com
*Attorneys for Plaintiff*

# SERVICE LIST

| | |
|---|---|
| Evan Small, Esq.<br>David Greene, Esq.<br>James C. Prichard, Esq.<br>Ball Janik LLP<br>201 E. Pine St., Suite 825<br>Orlando, FL 32801<br>Telephone (407) 455-2076<br>Facsimile (407) 902-2105<br>Emails<br>    esmall@balljanik.com<br>    dgreene@balljanik.com<br>    spoitras@balljanik.com<br>    jprichard@balljanik.com<br>    nanderson@balljanik.com<br><br><br><br>Co-Counsel for Plaintiff, Town Center Condominium Association, Inc. | Jeffrey M. Partlow, Esquire<br>Christina Bredahl Gierke, Esq.<br>COLE, SCOTT & KISSANE, P.A.<br>Tower Place, Suite 400<br>1900 Summit Tower Boulevard<br>Orlando, Florida 32810<br>Telephone (321) 972-0025<br>Facsimile (321) 972-0099<br>Emails: christina.gierke@csklegal.com<br>jeffrey.partlow@csklegal.com<br>jeanna.bond@csklegal.com<br>*Counsel for Defendants TOWN CENTER FOUNDATION, INC. and LEXIN CELEBRATION, LLC.* |
| Michael A. Alao, Esquire<br>Douglas Smith, Esquire<br>Hopping Green & Sams PO Box 6526<br>Tallahassee, FL 32314-6526 United States<br>Office: 850-222-7500<br>Fax: 850-521-2736<br>Email: michaela@hgslaw.com<br>dougs@hgslaw.com<br>shelleyl@hgslaw.com<br>*Co-Counsel for Town Center Foundation, Inc.*<br>*And Counsel for Lexin Realty LLC, Lexin Capital LLC, and Lexin Celebration Commercial LLC* | |